IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DAVID OPPENHEIMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:20-cv-4219-DCN |
| vs. ) | |
| ) | **ORDER** |
| DAVID DRUAND WILLIAMS; ASHLEY ) | |
| RIVER PROPERTIES, II, LLC d/b/a RIPLEY ) | |
| LIGHT YACHT CLUB; KRITI RIPLEY, LLC; ) | |
| KELLEY POE; and JOHN DOE, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The following matter is before the court on defendants David Druand Williams; Ashley River Properties, II, LLC; Kriti Ripley, LLC; Kelley Poe; and "John Doe," unidentified individual or entity's (collectively, "defendants") motion to compel, ECF No. 25. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

Defendants are the owners and/or operators of Ripley Light Marina, a small private marina located on an inlet of the Ashley River in Charleston, South Carolina. Plaintiff David Oppenheimer ("Oppenheimer") is a professional photographer and, it seems, professional litigant. In 2014, Oppenheimer captured aerial photographs of the Ripley Light Marina and the inlet on which it sits, a feat which Oppenheimer claims he accomplished by leaning out of the rear of a doorless helicopter. Shortly after capturing the photographs, Oppenheimer registered them with the United States Copyright Office. Oppenheimer claims that on December 12, 2017, he discovered that defendants were

1

displaying his photographs online to promote Ripley Light Marina's business. According to Oppenheimer, after contacting defendants in September 2019, he also learned that they were displaying his work on their business cards.

On December 6, 2020, Oppenheimer filed this action against defendants, asserting claims under the Copyright Act, 17 U.S.C. §§ 101 et seq., and the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 et seq. ECF No. 1, Compl. As defendants point out, this is not Oppenheimer's first foray into copyright litigation. Oppenheimer has filed at least 128 copyright lawsuits around the country, ECF No. 25-7 at 4–10, including eighteen in this district, ECF No. 25-1 at 2 n.1. On July 1, 2021, defendants filed a motion to compel, seeking discovery responses related to Oppenheimer's previous claims of copyright infringement and his request for attorneys' fees. ECF No. 25. On July 15, 2021, Oppenheimer filed a response. ECF No. 27. On July 22, 2021, defendants filed a reply, ECF No. 29. The court held a hearing on the motion on August 30, 2021. As such, it is ripe for the court's review.

## II. STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. "The scope and conduct of discovery

are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Service, 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### III.   DISCUSSION

Defendants' motion asks the court to compel Oppenheimer's responses to several of their interrogatories and requests for production. Specifically, defendants seek to compel responses to Requests for Production Nos. 12–16 and Interrogatories Nos. 2, 4, 5, and 7, which seek documents and information concerning Oppenheimer's litigation history as well as his earnings from his photography business. See ECF No. 25-3. Defendants also ask the court to compel Oppenheimer to respond to Request for Production No. 9, which seeks information relevant to Oppenheimer's claim for attorneys' fees. See id. Further, defendants complain that Oppenheimer's privilege log is untimely and otherwise deficient and therefore ask that the court deem Oppenheimer's

claims of privilege waived or, alternatively, order Oppenheimer to reform his privilege log. The court addresses each request in turn, ultimately granting defendants' motion in substantial part but narrowing the relevant discovery requests in scope.[1]

### A. Oppenheimer's Litigation History and Business Earnings

Defendants seek documents and information related to Oppenheimer's history of asserting copyright infringement claims, as well as documents and information concerning the income he has earned from his photography business. Oppenheimer first objects to the request as irrelevant. But there can be no doubt that the income

---

[1] Defendants initially argue that the court should grant their motion because Oppenheimer's objections to the relevant discovery requests constitute "generalized, nonspecific boilerplate objections." ECF No. 25-1 at 4. It is well-settled in this district, like in many others, that boilerplate objections are "meaningless" and should be deemed "meritless." Curtis v. Time Warner Ent.-Advance/Newhouse P'ship, 2013 WL 2099496, at *2 (D.S.C. May 14, 2013); see also United States v. Town of Irmo, S.C., 2020 WL 1025686, at *5 (D.S.C. Mar. 3, 2020) ("Parties are prohibited from asserting conclusory, boilerplate objections that fail to explain the precise grounds that make the request objectionable.") (internal quotation marks and alterations omitted). Although many of Oppenheimer's objections could fairly be characterized as fatally nonspecific, see ECF No. 25-3 at 4–6, his responses to the relevant discovery requests include some substantive, pointed objections that merit the court's consideration. As such, the court resolves to consider the substance of Oppenheimer's arguments, rather than overruling his objections on procedural grounds. Still, the court reminds counsel that boilerplate objections have no place in litigation and their continued use will result in a waiver of the right to object. Further, in the future, objections of the boilerplate variety will not be redeemed by coupling them with more specific, meaningful objections or responses. As Judge Anderson explained in Curtis:

> The parties shall not recite a formulaic objection followed by an answer to the request. It has become common practice for a party to object on the basis of [vagueness, proportionality, or undue burden] and then state that, "notwithstanding the above," the party will respond to the discovery request, subject to or without waiving such objection. Such an objection and answer preserves nothing and serves only to waste the time and resources of both the parties and the court. Further, such practice leaves the requesting party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been answered.

2013 WL 2099496, at *3.

4

Oppenheimer has derived from previous copyright claims and the income he has earned from his photography business are relevant to this lawsuit. In determining an appropriate award of damages in a copyright infringement lawsuit, courts routinely consider the extent to which the plaintiff has engaged in "copyright trolling." As the Seventh Circuit explained, "copyright trolls" are "opportunistic holders of copyrights" that "bring[] strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation." Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1097 (7th Cir. 2017). "Like the proverbial troll under the bridge, these firms try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation." Id.

Courts routinely factor a copyright plaintiff's status as a copyright troll into their damages calculus. See, e.g., ME2 Prods., Inc. v. Ahmed, 289 F. Supp. 3d 760, 764 (W.D. Va. 2018). Many courts have determined that minimum statutory damages are appropriate where the plaintiff is a "copyright troll" who "seek[s] copyright infringement damages not to be made whole, but rather as a primary or secondary revenue stream and [who] file[s] mass lawsuits . . . with the hopes of coercing settlements." Id. (quoting Malibu Media, LLC v. [Redacted], 2017 WL 633315, at *3 (D. Md. Feb. 15, 2017) and collecting cases). In fact, the Western District of North Carolina recently awarded Oppenheimer himself minimum statutory damages in a similar copyright infringement case based on the court's finding that Oppenheimer files copyright claims "as a revenue stream" rather than for the purpose of being made whole. Oppenheimer v. Griffin, 2019

WL 7373784, at *7 (W.D.N.C. Dec. 31, 2019), appeal dismissed, 2020 WL 4365337 (4th Cir. Mar. 23, 2020).

Even more compelling, the same court, in a distinct but similar copyright case brought by Oppenheimer, recently found that Oppenheimer must produce the very records defendants seek here, overruling Oppenheimer's relevance objection:

> Further, the relevance objections are also without merit. [Oppenheimer]'s photography revenue, prior copyright assertions, and prior copyright infringement lawsuits are relevant to the statutory damages at issue in this matter. See Oppenheimer v. Holt, 2015 WL 2062189, at *2 (W.D.N.C. May 4, 2015) (Reidinger, J.) (stating that "the revenue lost by the copyright holder" and "the conduct and attitude of the parties" are relevant for the purposes of determining statutory damages under the Copyright Act) (citation omitted). As such, instances where [Oppenheimer] has asserted his rights in his copyrights, the amounts recovered from those assertions, and [his] licensing agreements are all relevant here. Likewise, other courts have held that settlement agreements are relevant to the issue of damages in intellectual property cases. See Smith v. NBC Universal, 2008 WL 483604, at *4 (S.D.N.Y. Feb. 22, 2008) ("[E]vidence of the settlements and their amount are relevant to a determination of the amount of statutory damages . . . ."); see also Small v. Nobel Biocare USA, LLC, 808 F. Supp. 2d 584, 586–92 (S.D.N.Y. 2011) (finding settlement agreement relevant to royalty in patent infringement action). As such, the settlement agreements are relevant here and can be disclosed.

Oppenheimer v. Episcopal Communicators, Inc., 2020 WL 4732238, at *3 (W.D.N.C. Aug. 14, 2020) (alterations in original). In yet another one of Oppenheimer's copyright lawsuits, from this very courthouse no less, Judge Richard M. Gergel found evidence of Oppenheimer's previous copyright litigation relevant to the issue of damages and ordered him to "produce a list [ ] of lawsuits he has initiated to claim copyright infringement of any of his photographs," including "whether each litigation resulted in a settlement and, if so, the settlement value and terms . . . ." Oppenheimer v. Scarafile et al., 2:19-cv-3590-RMG (D.S.C.), ECF No. 55 at 5.

The court likewise finds the evidence relevant and accordingly orders Oppenheimer to produce evidence of all of his previous copyright claims and/or demands, including the revenue he derived from each. The court finds that evidence of Oppenheimer's earnings from his photography businesses[2] is likewise relevant and orders him to produce evidence sufficiently indicating the same. Assessing all income sources will assist the court in determining whether Oppenheimer is asserting this claim "to be made whole" or as part of "a primary or secondary revenue stream." ME2 Prods., Inc., 289 F. Supp. 3d at 764. That consideration is clearly relevant to the issue of damages, and Oppenheimer's objection to the contrary is meritless.[3] To be clear, the court does not find that Oppenheimer is a "copyright troll" or that he utilizes copyright litigation as a primary source of income; however, defendants' requests are proper because that inquiry is clearly relevant to the issue of damages and because the court must assess both revenue streams to make an informed finding. If Oppenheimer wishes to reap the spoils of copyright litigation, he must also incur its costs—namely, complying with valid discovery requests.

Nevertheless, defendants' requests, while relevant, at times sweep too broadly. For example, defendants Request for Production No. 12 states: "Please produce all documents and communications <u>in any way related to each and every instance</u> in which

---

[2] From the oral arguments presented on this motion, the court understands that Oppenheimer has at least one, if not more, LLCs through which he operates his photography business.

[3] Oppenheimer also contends that his alleged status as a "copyright troll" is irrelevant to the affirmative defense of "copyright misuse." <u>See</u> ECF No. 27 at 17. But the defense of copyright misuse is not at issue here. Clearly, evidence of Oppenheimer's past copyright claims is relevant to the issue of damages, notwithstanding any affirmative defense.

you have <u>in any way</u> asserted copyright-related rights." ECF No. 27-2 at 9.  Intuitively, not every document "in any way" related to Oppenheimer's previous copyright claims is necessary to determine appropriate damages here, meaning that the request is overly broad.  See Carter v. Archdale Police Dep't, 2014 WL 1774471, at *5 (M.D.N.C. May 2, 2014) ("[A] request for all documents 'relating to' a subject is usually subject to criticism as overbroad since . . . all documents 'relate' to all others in some remote fashion.").  What is necessary to the relevant consideration is the income Oppenheimer has derived from copyright infringement lawsuits, claims, and/or demands.  Accordingly, the court narrows defendants' requests, such that Oppenheimer must only produce those documents that reveal the copyright-related lawsuits, claims, and/or demands he has asserted and the income he derived from each.  Settlement agreements would certainly fit the bill.  Likewise, with respect to defendants' requests concerning Oppenheimer's business earnings as a photographer, Oppenheimer must only produce documents sufficient to definitively indicate his business earnings—tax returns would more than likely suffice.  Further, because Oppenheimer filed his first copyright infringement lawsuit in this district in 2014, the court narrows the timeframe of the requests to seven years.  So narrowed, the requests are appropriately tailored under Rule 26.[4]

      Oppenheimer asserts a slew of other objections, each of which the court overrules.  First, Oppenheimer notes that the sought settlement agreements cannot be disclosed because they are confidential.  But as this court has often held,

---

[4] Oppenheimer's claim that compiling the requested documents will require him to "expend over 200 hours" is simply unbelievable.  ECF No. 27 at 24.  Moreover, Oppenheimer's claim that complying evidence of past litigation would require a momentous effort does nothing to help him shed allegations that he files a large volume of infringement cases as a means of earning a consistent income.

> [T]he Fourth Circuit 'has never recognized a settlement privilege or required a particularized showing in the context of a subpoena for confidential settlement documents . . . . Accordingly, the only question before the court is whether any information in the . . . agreement is relevant, and not unduly burdensome to produce.'

Brown-Thomas v. Hynie, 2020 WL 6737757, at *4 (D.S.C. Nov. 17, 2020) (quoting Polston v. Eli Lilly & Co., 2010 WL 2926159, at *1 (D.S.C. July 23, 2010)) (alterations in original). Moreover, the relevant settlement agreements, if in fact confidential, will remain that way, given that this case is governed by a confidentiality order. See ECF No. 23. And finally, Oppenheimer confirmed at the hearing that the relevant settlement agreements' confidentiality provisions are private agreements, not the result of court orders. For these reasons, the confidentiality of the relevant settlement agreements cannot operate as a shield to their disclosure.

Oppenheimer assets two additional objections with respect to evidence of his business earnings as a professional photographer. First, he argues that compiling evidence of his earnings would be unduly burdensome because he "is a sole proprietor that does not keep a centralized database and cannot simply turn over 10 years-worth of earnings records from multiple sources of 'business' and/or 'professional services' without undue burden and expense." ECF No. 27 at 28–29. Oppenheimer also argues that defendants' request for his tax returns is too invasive. Id. at 29. But Oppenheimer cannot have it both ways. If his concern is the burden posed by collecting decentralized evidence of all of his business earnings, he may simply disclose his tax returns, which would require minimal effort and reveal the necessary information.[5] If, however, his

---

[5] Moreover, counsel for Oppenheimer confirmed at the hearing that Oppenheimer's tax documents are prepared by a certified public accountant.

concern is privacy, then he may withhold his tax returns and endeavor to produce alternative documentation that sufficiently demonstrates his business earnings. The "qualified privilege" that applies to tax returns is far from absolute, E. Auto Distributors, Inc. v. Peugeot Motors of Am., Inc., 96 F.R.D. 147, 148 (E.D. Va. 1982), and, even where it serves to shield tax returns from disclosure, courts routinely order the withholding party to produce alternate documentation that reveals the sought information, Terwilliger v. York Int'l Corp., 176 F.R.D. 214, 217 (W.D. Va. 1997). In short, Oppenheimer must produce evidence of all of his business earnings one way or the other.

In sum, the court narrows the relevant discovery requests such that Oppenheimer must produce evidence sufficient to conclusively indicate the income he has earned through his previous copyright claims and/or demands as well as the income he has earned from his professional photography business. To that extent, defendants' motion to compel is granted.

**B. Attorneys' Fees**

In their Request for Production No. 9, defendants seek "all invoices submitted by your attorneys[] and other evidence which will be used in support of your claim for Lodestar costs and attorneys' fees." ECF No. 27-2 at 8. Oppenheimer responded to the request with a boilerplate objection citing the attorney-client privilege (which, the court notes, has no application here given that the privilege covers communications, not information relevant to a calculation of attorneys' fees) and claiming that he "does not

---

Oppenheimer's use of a professional undercuts his argument that collecting the relevant records would be overly burdensome.

have responsive documents[.]" Id.[6] In response to the motion to compel, Oppenheimer abandons his privilege claims, admits the relevance of the sought materials, and argues that the request is "premature." ECF No. 27 at 30. Oppenheimer also notes that he has now supplemented his response to include his attorneys' hourly billing rate. Id.

As an initial matter, because Oppenheimer seeks attorneys' fees in his complaint, evidence of his attorneys' hourly rates and hours expended is undoubtedly relevant. Compl. ¶¶ 41, 45, 47, 55. Further, Oppenheimer must produce the requested documentation for two reasons. For one, Oppenheimer did not initially object to defendants' request as "premature," meaning that he waived his right to present such a theory in response to the motion to compel. See Ayers v. Cont'l Cas. Co., 240 F.R.D. 216, 222 (N.D.W. Va. 2007) ("[T]he failure to raise an objection within the time period allowed by the [Federal] Rules [of Civil Procedure] will result in waiver of the objection unless the party seeking to raise the objection can show good cause for the failure."). Second, and more fundamentally, the law does not recognize "prematurity" as a valid basis for withholding relevant evidence. To be discoverable, evidence must be relevant, proportional, and nonprivileged; the rules recognize no maturity requirement. Fed. R. Civ. P. 26(b). Therefore, the court orders Oppenheimer to produce the evidence he would use to support his claim for attorneys' fees, including the hours his counsel has expended on the instant lawsuit and the fees they charge. Accordingly, the court grants the motion to compel with respect to defendants' Request for Production No. 9.

---

[6] Despite his initial claim of not possessing any relevant documents, Oppenheimer's subsequent arguments make clear that he has the ability to produce documentary evidence supporting his claim for attorneys' fees.

11

### C. Privilege Log

Finally, defendants claim that Oppenheimer has failed to produce a sufficient privilege log. Accordingly, they ask the court to deem Oppenheim's assertion of the attorney-client privilege waived or, alternatively, to order him to reform his privilege log. Indeed, Oppenheimer asserted the attorney-client privilege in response to numerous requests yet initially failed to produce a privilege log of any sort, as clearly required by the federal rules. Fed. R. Civ. P. 26(b)(5) provides that:

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

After defendants informed Oppenheimer of the deficiency, he provided a so-called privilege log that wholly fails to identify the nature of the withheld communications. See ECF No. 25-9.[7] It is the law in this district that "[i]f a general objection of privilege is made without attaching a proper privilege log, the objection of privilege may be deemed waived." Curtis, 2013 WL 2099496, at *3; see also ePlus Inc. v. Lawson Software, Inc., 280 F.R.D. 247, 252 (E.D. Va. 2012) (deeming the attorney-client privilege waived with respect to deficient privilege log entries); Atteberry v. Longmont United Hosp., 221 F.R.D. 644, 649 (D. Colo. 2004) ("The failure to produce a privilege log or production of an inadequate privilege log may be deemed a waiver of the privilege asserted."). A

---

[7] Each entry of Oppenheimer's "privilege log" includes one of four single-word descriptors of the communications withheld: "Email," "Article," "Report," and "Research." ECF No. 25-9. These labels do little to fulfil Oppenheimer's obligation to "describe the nature of the [withheld communications] . . . in a manner that . . . will enable the other parties to assess the claim [of privilege]." Fed. R. Civ. P. 26(b)(5).

finding of waiver is appropriate here. While a seemingly harsh result, the court's finding that Oppenheimer has waived the attorney-client privilege in this instance sufficiently reflects Oppenheimer's egregious failures to comply with the clear import of the federal rules. Accordingly, the court deems the privilege waived and orders Oppenheimer to produce the withheld communications.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS IN PART AND DENIES IN PART** the motion to compel in accordance with the instructions of this order.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 8, 2021**
**Charleston, South Carolina**

13