# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| DAVID OPPENHEIMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:20-cv-4219-DCN |
| vs. ) | |
| ) | **ORDER** |
| DAVID DRUAND WILLIAMS; ASHLEY ) | |
| RIVER PROPERTIES, II, LLC d/b/a RIPLEY ) | |
| LIGHT YACHT CLUB; KRITI RIPLEY, LLC; ) | |
| KELLEY POE; and JOHN DOE, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The following matter is before the court on plaintiff David Oppenheimer's motion to reconsider, ECF No. 35. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

Defendants David Druand Williams; Ashley River Properties, II, LLC; Kriti Ripley, LLC; Kelley Poe; and "John Doe" (collectively, "defendants") are the owners and/or operators of Ripley Light Marina, a small private marina located on an inlet of the Ashley River in Charleston, South Carolina. Oppenheimer is a professional photographer and, it seems, a professional litigant. In 2014, Oppenheimer took aerial photographs of the Ripley Light Marina and the inlet on which it sits, a feat which Oppenheimer claims he accomplished by leaning out of the rear of a doorless helicopter. Shortly after taking the photographs, Oppenheimer registered them with the United States Copyright Office. Oppenheimer claims that on December 12, 2017, he discovered that defendants were displaying his photographs online to promote Ripley Light Marina's business. According

1

to Oppenheimer, after contacting defendants in September 2019, he also learned that they were displaying his work on their business cards.

On December 6, 2020, Oppenheimer filed this action against defendants, asserting claims under the Copyright Act, 17 U.S.C. § 101 et seq., and the Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq. ECF No. 1, Compl. As defendants point out, this is not Oppenheimer's first foray into copyright litigation. Oppenheimer has filed at least 128 copyright lawsuits around the country, ECF No. 25-7 at 4–10, including sixteen in this district, ECF No. 25-1 at 2 n.1. Nevertheless, when he was served with discovery in this action, he responded with a slew of privileged-based objections and failed to provide any privilege log. After a meet-and-confer, Oppenheimer eventually produced a privilege log; however, the log only identified the date of the communications, the participants, and the privileges claimed. On July 1, 2021, defendants filed a motion to compel, arguing, among other things, that Oppenheimer failed to produce a sufficient privilege log to support his privilege claims and that the court should deem his privilege-based objections waived. ECF No. 25. After hearing oral arguments, the court granted in part and denied in part the motion to compel on September 8, 2021 (the "September Order"). ECF No. 34. Specifically, the September Order required Oppenheimer to produce, inter alia, certain documents associated with his litigation revenues, business earnings, and claim for attorneys' fees. ECF 34 at 3–11. The court also found that Oppenheimer's privilege log wholly failed to identify the nature of the withheld communications and that such a failure was egregious in nature—thus, justifying a complete waiver of the privilege itself. Id. at 12–13. The court therefore ordered

Oppenheimer to produce the documents withheld as privileged based upon his multiple failures to comply with Federal Rule of Civil Procedure 26. Id.

On October 1, 2021, Oppenheimer filed a motion to reconsider the court's September Order. ECF No. 35. On October 14, 2021, defendants responded in opposition, ECF No. 38, and on October 21, 2021, Oppenheimer replied, ECF No. 40. As such, the motion has been fully briefed and is now ripe for the court's review.

## II.   STANDARD

Federal Rule of Civil Procedure 54(b) is the proper avenue by which a party may seek reconsideration of an interlocutory order.[1] Spill the Beans, Inc. v. Sweetreats, Inc., 2009 WL 2929434, at *1 (D.S.C. Sept. 8, 2009). Rule 54(b) provides that:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) (citations omitted); see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to

---

[1] While defendants argue that the strictures of Federal Rule of Civil Procedure 59 apply, that rule is confined to final orders, of which the September Order resolving discovery disputes was not.

reopening at the discretion of the district judge."). Compared to motions under Rule 59(e) for reconsideration of final judgments, "Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (citation omitted).

"The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion" but has noted that Rule 54(b) motions "are 'not subject to the strict standards applicable to motions for reconsideration of a final judgment.'" Ashmore v. Williams, 2017 WL 24255, at *2 (D.S.C. Jan. 3, 2017) (quoting Am. Canoe Ass'n, 326 F.3d at 514). "In this regard, district courts in the Fourth Circuit . . . look to the standards of motions under Rule 59 for guidance." Id. (citations omitted). Therefore, Rule 54(b) reconsideration is appropriate: "(1) to follow an intervening change in controlling law; (2) on account of new evidence [discovered during litigation as opposed to after the judgment]; or (3) to correct a clear error of law or prevent manifest injustice." Id. (citation omitted); Carlson, 856 F.3d at 324. Like a Rule 59(e) motion, a Rule 54(b) motion "may not be used merely to reiterate arguments previously rejected by the court." Sanders v. Lowe's Home Ctrs., LLC, 2016 WL 5920840, at *4 (D.S.C. Oct. 11, 2016) (citation omitted).

### III.   DISCUSSION

Oppenheimer requests that the court reconsider the portion of its September Order deeming Oppenheimer's attorney-client privilege waived and compelling Oppenheimer to produce the withheld communications. ECF No. 34 at 12–13. To support his motion, Oppenheimer puts forth two main arguments. First, Oppenheimer maintains that his

4

original privilege log was adequate. Second, Oppenheimer alternatively contends that even if his original privilege log were inadequate, the harsh sanction of waiver is unjustified. The court discusses each argument in turn, ultimately disagreeing on both fronts.

### A. Adequacy of the Privilege Log

Oppenheimer asserts that the descriptive labels provided in his privilege log enabled defendants to assess his claims of privilege or protection, as required under the federal rules. Oppenheimer made two claims to justify his withholding of documents responsive to discovery requests: the attorney-client privilege and work-product doctrine. A party asserting the privilege or protection has the burden of demonstrating its applicability. See United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam). Fed. R. Civ. P. 26(b)(5) provides that:

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

It is the law in this district that "[i]f a general objection of privilege is made without attaching a proper privilege log, the objection of privilege may be deemed waived." Curtis v. Time Warner Ent.-Advance/Newhouse P'ship, 2013 WL 2099496, at *3 (D.S.C. May 14, 2013). When a party relies on a privilege log to assert these privileges, the log must "as to each document set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." N.L.R.B. v. Interbake Foods, LLC, 637 F.3d 492, 501–02 (4th Cir. 2011) (internal citation and alterations omitted).

Oppenheimer argues that his privilege log complied with Rule 26(b)(5)'s requirement to "expressly make the claim" and "describe the nature of the documents" such that defendants can assess the claim. Specifically, the privilege log identified the date, author and recipients of the documents, type of document being withheld, and the specific privilege(s) asserted for each. See ECF Nos 27-5 and 27-6. Although Oppenheimer made the same argument in the context of the motion to compel, Oppenheimer clarifies this point in his instant motion to reconsider. Oppenheimer explains that, of the sixty-four email communications withheld based on privilege, forty-three emails between Oppenheimer and his counsel were dated after the filing of the instant action and are therefore "presumptively privileged."[2] ECF No. 35 at 6–7, 9 n.3 Additionally, for all thirteen non-email documents listed, the privilege log identified Oppenheimer's counsel as either the author or the recipient—showing that they were prepared by an attorney and thereby protected work-product. The court is unmoved by these belated arguments.

### 1. Attorney-Client Privilege Claims

The court did not err in finding that Oppenheimer did not properly assert the attorney-client privilege for communications identified in his privilege log. To begin, the fact that an attorney-client relationship exists does not, as Oppenheimer appears to assume, endow all communications between the attorney and client with a privileged status, shielding them from disclosure. By definition, the attorney-client privilege applies only if the communications are primarily for the purpose of securing legal advice. United

---

[2] In so arguing, Oppenheimer seems to concede that his privilege log was inadequate with respect to the other twenty-one email communications.

6

States v. United Shoe Mach., 89 F.Supp. 357, 358–59 (D. Mass. 1950). To determine whether the withheld communications were made primarily for the purpose of seeking or providing legal advice, defendants, and in turn this court, needed to know the subject matter of the communications. Oppenheimer utterly failed to provide that information.

The court is not satisfied by Oppenheimer's citation to non-binding, unpublished caselaw that a presumption of attorney-client privilege attaches to any communications between a client and his counsel after initiation of the lawsuit for which the client is being represented. See ECF No. 35 at 6–7, 9 n.3 (citing Ryan Inv. Corp. v. Pedregal de Cabo San Lucas, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) (denying a motion to compel "log of post-litigation counsel communications and work product" because those communications are "presumptively privileged"); Frye v. Dan Ryan Builders, Inc., 2011 WL 666326, at *7 (N.D. W. Va. Feb. 11, 2011) (reasoning that a party did not have to produce a privilege log for its litigation file). The Fourth Circuit does not appear to recognize such a presumption, but instead, explicitly stated that "it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality." United States v. (Under Seal), 748 F.2d 871, 875 (4th Cir. 1984). And even if such a presumption did apply, Oppenheimer does not cite any federal rule or binding caselaw that provides an exception to a party's privilege log obligations under Rule 26(b)(5) for presumptively privileged documents. While the court, in its discretion and based on efficiency considerations, could have relieved Oppenheimer of his obligation to include in his privilege log those communications between him and his counsel dated after December 6, 2020, Oppenheimer did not request, and the court therefore did not grant, such relief. Instead, Oppenheimer took it upon himself to shirk

7

his Rule 26(b)(5) obligations by first not providing defendants a privilege log at all and then providing them one that failed to describe the nature of the communications at issue.

In his motion to reconsider, Oppenheimer attempts to salvage his defective privilege log by asserting that all forty-three emails between him and counsel "related to and/or concerned the facts at issue in this suit by or from Oppenheimer counsel, while acting as Oppenheimer's lawyer, and all of them were made for the purpose of securing a legal opinion, furthering legal services, and/or assisting the proceedings of the instant suit." ECF No. 35 at 6. He further provides an amended privilege log with additional information on the nature of each communications. However, Oppenheimer missed the boat to provide facts to support his claim of privilege. Had Oppenheimer made these arguments in the context of the motion to compel, the court very well may have been inclined to impose a lesser sanction than waiver, at least with respect to the forty-three allegedly privileged emails between him and counsel dated after December 6, 2020. However, he did not, and the court was certainly not required to parse through Oppenheimer's privilege log to determine the number of the documents at issue that were communications between him and his counsel and dated after the initiation of this litigation to exclude them from its finding of waiver. To the extent Oppenheimer knew that the majority of the communications at issue fell under this category, Oppenheimer was required to bring that information to the court's attention. Oppenheimer likewise was required to expressly state in his privilege log that all such communications were primarily for the purpose of securing legal advice and describe the subject matter of those communications so that defendants could challenge such an assertion. Oppenheimer was not entitled to delay in setting forth the necessary facts to establish his claim of privilege

until after (1) defendants confronted him for failing to provide a privilege log, (2) the parties litigated a motion to compel regarding Oppenheimer's subsequent failure to provide sufficient information in his belated privilege log, and (3) the court resolved that motion in defendants' favor. The ship for Oppenheimer's discovery compliance has sailed. The court stands by its holding that Oppenheimer's disregard for the federal rules with respect to his privilege log warranted waiver of the attorney-client privilege claimed therein.

### 2. Work-Product Protection Claims

Oppenheimer's arguments regarding the thirteen documents it claims as protected work product are similarly unconvincing. Oppenheimer argues that by identifying the document type as either "Memo," "Report," "Article," or "Research" and identifying work-product as the privilege asserted, defendants could discern that such documents were prepared at the direction of an attorney in anticipation of litigation. On this front, the court disagrees. To begin, Oppenheimer failed to include the dates and authors for several of the identified documents. Moreover, Oppenheimer did not include a general description of the subject matter of any withheld document. In claiming the work-product privilege, the party must demonstrate that the documents in question were created "in preparation for litigation." In re Grand Jury Proceedings, 33 F.3d 342, 348 (4th Cir. 1994). Not all documents created after litigation is anticipated are necessarily protected under the work-product doctrine. For example, documents created after litigation is anticipated but in the normal course of business would not be subject to such protection. See Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992) ("[W]e have held that materials prepared in the

ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3)." (citing Goosman v. A. Duie Pyle, Inc., 320 F.2d 45, 52 (4th Cir. 1963)). Other than the bare assertion that the documents at issue were prepared in anticipation of litigation, Oppenheimer's privilege log was devoid of any information from which defendants could deduce the propriety of those assertions. Again, only after this court deemed Oppenheimer's failures to comply with Rule 26(b)(5) a waiver of any claimed work-product protection did Oppenheimer attempt to provide defendants and the court the missing information. Having already found that Oppenheimer waived his asserted privileges and protections for failure to comply with the federal rules, the court will not countenance Oppenheimer's untimely attempts to cure the deficiencies in his privilege log. The court will not afford parties endless opportunities to comply with their discovery obligations; it expects parties to so comply in the first instance to avoid unnecessary discovery disputes and court intervention. Therefore, the court did not err in its September Order in finding that Oppenheimer waived his assertions of privilege and protection, including under the work-product doctrine, for the relevant documents.[3]

### B. Justification of Waiver

Oppenheimer alternatively argues that even if his privilege log was inadequate, "[m]inor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver." ECF No. 35 at 10. Oppenheimer

---

[3] To the extent that the court did not explicitly refer to Oppenheimer's work-product protection claims in its waiver analysis in its September Order, the court clarifies that such analysis applies with equal force to those claims, as does the court's finding that Oppenheimer waived those claims.

complains that the court described Oppenheimer's discovery missteps as "egregious failures" but did not explain how his conduct rose to that level  Id.  The court disagrees with both Oppenheimer's characterization of his conduct as "minor procedural violations" and his contention that the court did not explain how his actions were egregious.  In its September Order, the court explained the basis for its holding as follows:

> Oppenheimer asserted the attorney-client privilege in response to numerous requests yet initially failed to produce a privilege log of any sort, as clearly required by the federal rules . . . . After defendants informed Oppenheimer of the deficiency, he provided a so-called privilege log that wholly fails to identify the nature of the withheld communications . . . . Each entry of Oppenheimer's "privilege log" includes one of four single-word descriptors of the communications withheld: "Email," "Article," "Report," and "Research."  ECF No. 25-9.  These labels do little to fulfil Oppenheimer's obligation to "describe the nature of the [withheld communications] . . . in a manner that . . . will enable the other parties to assess the claim [of privilege]."  Fed. R. Civ. P. 26(b)(5).

ECF 34 at 12.  The court continues to view Oppenheimer's conduct as egregious. Nevertheless, the court need not find Oppenheimer's actions egregious to decide that Oppenheimer waived his asserted privileges and protections.  While Oppenheimer cites caselaw that suggests that the court could have given Oppenheimer additional chances to rectify his privilege log, Oppenheimer noticeably fails to cite any caselaw showing that further opportunities for compliance were required before deeming the privilege or protection waived.  Courts in this district have expressly found the opposite to be true. See Curtis, 2013 WL 2099496, at *3 ("If a general objection of privilege is made without attaching a proper privilege log, the objection of privilege may be deemed waived."). Indeed, the court was entitled to deem the privilege waived upon Oppenheimer's initial failure to provide a privilege log.  The court does not find it unjust that it did so only after

Oppenheimer once again failed to properly assert the privilege by providing a blatantly defective privilege log, as discussed in detail above. Therefore, the court will not modify its holding in its September Order that Oppenheimer waived the privileges and protections claimed in his privilege log. Accordingly, the court orders Oppenheimer to comply with that portion of the September Order by producing the withheld documents at issue within thirty days.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 17, 2021**
**Charleston, South Carolina**